**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* WILLIAM CEAS JR. and WILLIAM CEAS JR., individually; | ) ) ) | |
| | ) | Case No.: 12-cv-2870 |
| Plaintiffs, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| CHRYSLER GROUP LLC; | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion to dismiss [20]. For the reasons stated below, Defendant's motion to dismiss [20] is granted without prejudice. Plaintiff has 60 days to file a second amended complaint, should he so choose. If Plaintiff does not file a second amended complaint within 60 days, the Court will dismiss the case with prejudice.

## I.      Background[1]

On April 30, 2009, Chrysler LLC, formerly known as DaimlerChrysler Corporation, and certain of its affiliates (collectively, "Old Chrysler"), filed a pre-packaged bankruptcy petition under chapter 11 in the United States Bankruptcy Court for the Southern District of New York. On that same day, in a "well-publicized transaction,"[2] Old Chrysler entered into a Master Transaction Agreement ("MTA") agreeing to sell substantially all of its assets free and clear of all claims and liabilities—other than those expressly listed in the MTA (the "Assumed Liabilities")—to  defendant Chrysler Group LLC ("New Chrysler") for $2 billion in cash. On

---

[1]  The Court accepts as true the facts alleged in Plaintiff's amended complaint and makes all reasonable inferences in his favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

[2] *In re Old Carco LLC*, 2013 WL 1856330, at *2 (Bankr. S.D.N.Y. 2013).

June 1, 2009, the bankruptcy court entered an order approving the sale (the "Sale Order," *In re Chrysler LLC*, No. 09-50002 (AJG) (Bankr. S.D.N.Y. June 1, 2009) (ECF No. 3232)) pursuant to 11 U.S.C. § 363(f) of the Bankruptcy Code. See *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009) (opinion accompanying sale order), *aff'd* 576 F.3d 108 (2d Cir. 2009), *vacated and remanded sub nom. Ind. State Police Pension Trust v. Chrysler LLC*, 130 S. Ct. 1015 (2009), *dismissed as moot sub nom. In re Chrysler LLC*, 592 F.3d 370 (2d Cir. 2010).

On April 18, 2012, Plaintiff William Ceas, Jr. filed this *qui tam* False Claims Act ("FCA") complaint [1], both individually and on behalf of the United States, alleging that New Chrysler (or, assumedly, its purported predecessors) made false statements to the United States regarding the warranties on certain vehicles that Old Chrysler sold to the United States in 2004 and 2005. Specifically, Plaintiff alleges that "Chrysler fraudulently induced the Government into purchasing * * * Chrysler vehicle[s] after the Government was advised that the vehicle[s] would have a 7 year/70,000 mile powertrain warranty," when in fact "these vehicles purchased by the United States did not come with a 7 year/70,000 mile powertrain warranty." [24, at 8.] The United States declined to intervene in this action pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2)(A) [6], and Ceas is continuing the action as a relator in the name of the United States. Plaintiff filed an amended complaint on July 17, 2014 [12], doubling his tally of alleged False Claims Act violations from three to six. Defendant New Chrysler has moved to dismiss all six counts in Plaintiff's amended complaint [20] on the grounds that (a) Plaintiff's claims are barred by the Sales Order issued in the chapter 11 bankruptcy proceedings and, alternatively, that (b) Plaintiff failed to plead his claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).

## II.      Analysis

### A.      Whether New Chrysler Assumed FCA Liability in the MTA

#### 1.      Assumed liabilities

As a threshold matter, in order to rule on the legal issue of whether Plaintiff's FCA claims are barred by the bankruptcy court's 2009 injunction, the Court must review and interpret the Sales Order and MTA, which describe the liabilities that New Chrysler assumed in purchasing Old Chrysler's assets. Federal Rule of Civil Procedure 12(d) says that "[i]f, on a motion under Rule 12(b)(6) * * * matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Seventh Circuit recognizes a narrow exception to this rule, see *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), noting that the rule's purpose is to "prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). Specifically, documents that are referred to in the complaint and are central to the claim may be considered on a motion to dismiss. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (discussing *Venture Associates* and determining that a contract on which the claim is based is central to the claim and may be considered on a motion to dismiss). A district court is also permitted to take judicial notice of public documents, including public court documents, while considering a motion to dismiss under Rule 12(b)(6). See *Pierce v. Ill. Dep't of Human Servs.*, 128 F. App'x 534, 536 n.1 (7th Cir. 2005) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)). Here, the Sale Agreement and the MTA are public documents—both via the bankruptcy court's docket and

Chrysler's SEC filings—and are contracts that are central to Plaintiff's claims. Accordingly, the Court is permitted to review these documents without converting Defendant's motion to dismiss into a motion for summary judgment. See *Ennega v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 636 (7th Cir. 2001) ("In reviewing a motion to dismiss, we may look to matters of public record outside the pleadings, including the public court documents filed in the bankruptcy proceeding.").

The Sale Order explicitly states that New Chrysler purchased Old Chrysler's assets "free and clear" of all "claims" (save for the Assumed Liabilities),[3] whether arising before or after the petition date. [Sale Order, 21-2, at 4, 10.] The Sale Order adopted a broad, inclusive definition of "claim":

> [L]iens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, restrictions and interests and encumbrances of any kind or nature whatsoever whether arising before or after

---

[3] While the parties do not dispute that the bankruptcy court had the authority to approve Old Chrysler's sale of assets to New Chrysler free and clear of all claims pursuant to § 363(f) of the Bankruptcy Code, that is an issue of some disagreement among courts. The plain language of 11 U.S.C. § 363(f) says only that a debtor may sell its property "free and clear of any *interest* in such property," *id.* (emphasis added), without any mention of *claims*. A recent bankruptcy court opinion noted a circuit split on the issue, putting the Seventh Circuit among those that have held that § 363(f) *does not* provide a basis for selling property free and clear of successor liability claims. *In re Gen. Motors Corp.*, 407 B.R. 463, 503 (Bankr. S.D.N.Y. 2009) *aff'd sub nom. In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) and *aff'd sub nom. In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010) (citing *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544–45 (7th Cir. 2003)). But *Precision* does not offer such a holding, and concludes only that "the term 'any interest' as used in section 363(f) is sufficiently broad to include Precision's possessory interest as a lessee." *Id.* at 545. The *Precision* court also noted that "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Id.*; see also *In re Elk Grove Vill. Petroleum*, 510 B.R. 594, 603 (Bankr. N.D. Ill. 2014) (citing cases from within this circuit that have found an 'interest' to include claims that flow from the ownership of property). Somewhat circularly, the Court is also persuaded by the reasoning in *In re General Motors*, which relies heavily on Judge Gonzalez's rulings in the Chrysler bankruptcy, approving the § 363 sale at issue here. 407 B.R. at 504 (citing *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[*I*]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.")).

the Petition Date, whether at law or in equity, including all claims or rights based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement and all rights at law or in equity (collectively, "Claims") * * *.

[Sale Order, 21-2, at 4.] And the definition of "claim" in § 101(5) the Bankruptcy Code (as

referenced in the Sale Order) is also broad, such that it includes FCA and other fraud claims:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.A. § 101(5). And the Sale Order makes clear that the "Assumed Liabilities" are the

only liabilities (and claims) that passed from Old Chrysler to New Chrysler:

Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date.

[Sale Order, 21-2, at 19.] Further (and somewhat redundantly) expanding on New Chrysler's

limited liability pursuant to the asset purchase, the Sale Order enjoins all legal and equitable

actions in conflict with the terms of the Sale Order:

Effective upon the Closing * * * all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Claim other than (i) Assumed Liabilities or (ii) Claims against any Purchased Company or (b) successor liability of the Purchaser for any of the Debtors, including, without limitation, the following actions with respect to clauses (a) and (b): * * * (v) commencing or continuing

5

any action, in any manner or place, that does not comply, or is inconsistent with, the provision of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof * * *.

[Sale Order, 21-2, at 20.] Plaintiff's claims relate to fraudulent statements that Old Chrysler allegedly made to the government in 2004 and 2005 regarding the warranties of certain vehicles. Plaintiff does not allege that New Chrysler (which was created in 2009) made any fraudulent statements to the government or that New Chrysler designed, manufactured, or sold any of the subject vehicles. Thus, under the plain terms of the Sale Order, Plaintiff can only raise these claims against New Chrysler to the extent that New Chrysler assumed Old Chrysler's liability for FCA claims—that is, if Plaintiff's FCA claims are "Assumed Liabilities." An exhaustive list of Assumed Liabilities appears in § 2.08 of the MTA, none of which expressly mentions fraud or FCA claims. Nonetheless, Plaintiff points to §§ 2.08(g) and (h) as proof that New Chrysler assumed liability for FCA claims,[4] which, as amended, read as follows:

(g)  all Liabilities pursuant to product warranties (including extended services contracts purchased from one of the Debtors), product returns and rebates on vehicles sold by Sellers prior to the Closing;

(h)  (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-

---

[4] Plaintiff also points to § 2.09(j) as another category of claims for which New Chrysler assumed liability that allegedly includes FCA claims. It includes "all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing." However, § 2.09 lists "Excluded Liabilities" that *did not* transfer to New Chrysler. While New Chrysler pounced on this sizeable misstep as proof that it did not assume FCA liability, the Court is not convinced that the FCA claims fall within § 2.09(j), see *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (noting that Rule 9(b) applies to FCA claims "because the False Claims Act condemns fraud but not negligent errors or omissions"), and thus Plaintiff's error is of no consequence here.

containing material or any other Hazardous Material and (d) do not include any claim for exemplary or punitive damages.

In short, Plaintiff alleges that his FCA claims qualify as either breach-of-warranty claims (per § 2.08(g)) or product-liability claims (per § 2.08(h))—or both. New Chrysler responds by noting that Plaintiff raises only FCA claims in his amended complaint and does not allege either a breach-of-warranty or a products-liability claim. To further distance Plaintiff's FCA claims from breach-of-warranty and products-liability claims, New Chrysler notes the total lack of overlap in the elements required to establish such claims. Compare *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011) (listing FCA elements as "(1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false"), with *Tayne v. Commonwealth Fin. Corp.*, 1990 WL 205951, at *1 (N.D. Ill. Nov. 28, 1990) ("In order to establish a breach of warranty under Illinois law, a plaintiff must show that the defendant breached an affirmation of fact or promise which was made as part of the bargain between the parties. In the context of a sale, the warranty must be one of the facts as they exist at the time of the sale, and it must induce reliance in the purchaser." (citations omitted)) and *Haddix v. Playtex Family Prods. Corp.*, 138 F.3d 681, 683 (7th Cir. 1998) ("In order to state a cause of action for strict products liability in Illinois, the plaintiff must show that: 1) an injury resulted from the condition of the product; 2) the condition of the product was unreasonably dangerous; and 3) the condition existed at the time that the product left the manufacturer's control.") and *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 307 (7th Cir. 2010) ("To establish [products liability] on a theory of negligent design, a plaintiff must show duty, breach, proximate cause, and damages.") and *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 986 (N.D. Ill. 2010) ("To prevail on a negligence claim, a products liability plaintiff must show that the manufacturer deviated from the

standard of care [that] other similar manufacturers followed at the time or show that the manufacturer knew or should have known of the risk posed by the product design and failed to warn the plaintiff of its dangerous propensities."). More to the point, however, is the fact that Plaintiff cannot raise breach-of-warranty or products-liability claims on behalf of the government under the FCA, see 31 U.S.C. § 3730(b), and Plaintiff makes no such claims individually. As such, Plaintiff's FCA claims cannot be construed as breach-of-warranty or products-liability claims.

That being said, while MTA § 2.08(h) transferred certain products liability *claims* to New Chrysler, MTA § 2.08(g) imputes to New Chrysler "all Liabilities *pursuant to product warranties*," *id.* (emphasis added), without limiting the provision just to breach-of-warranty claims. The question, then, is whether MTA § 2.08(g) can be read broadly such that liabilities stemming from allegedly fraudulent statements made to the government *about* product warranties can be construed as liabilities *pursuant to* product warranties. It cannot. Here, the liabilities at issue are "pursuant to" allegedly false statements made to the government, and are not "pursuant to" any product warranties. At best, the FCA claims are *factually related to* product warranties, but the liabilities themselves arise from Old Chrysler's alleged conduct *vis-à-vis* the government, not its warranties, returns, or rebates. Fraud claims are a serious matter, especially to a sophisticated purchaser such as New Chrysler. Allowing a potentially high-stakes fraud claim to sneak into an Assumed Liabilities provision simply because the factual context of the allegedly fraudulent statement happens to align with an actual assumed liability would create both a sizeable loophole for *qui tam* plaintiffs to seize upon and an unexpected and unwelcomed vulnerability for asset purchasers.

Bankruptcy Judge Bernstein came to the same conclusion in interpreting the exact same

documents here, holding summarily that "New Chrysler did not assume any liabilities based on fraud or fraudulent practices." *In re Old Carco LLC*, 2013 WL 1856330, at \*5 (Bankr. S.D.N.Y. May 2, 2013) (citing *Tatum v. Chrysler Group LLC*, No. 11-09411 (Bankr. S.D.N.Y. Feb. 15, 2012) (ECF No. 73)). That court also interpreted the same MTA § 2.08(g) provision regarding New Chrysler's assumed warranty liabilities, noting that "the only warranty-related obligations that New Chrysler assumed under MTA § 2.08(g) were the limited written warranties issued in connection with the vehicle pursuant to which the Debtors were obligated to 'cover the cost of all parts and labor needed to repair any defective item on [a] truck supplied by [the Debtors] that is defective in material, workmanship or factory preparation.'" *Id.* at \*3 (citing *Tulacro v. Chrysler Group LLC*, No. 11-09401 (AJG), at 6 (Bankr. S.D.N.Y. Oct. 28, 2011) (ECF No. 18)). The court went on to note that "[t]hese obligations corresponded to the Factory Warranty, and were limited to the costs of parts and labor associated with the repair. New Chrysler did not assume any other warranty-related obligations except for (1) certain Lemon Law claims (under *Sale Order* ¶ 19) and (2) Product Liability Claims arising from accidents (under MTA § 2.08(h), as amended." *Id.* (citing *Tulacro*, at 6–7). This Court sees nothing that would warrant an inconsistent ruling here. Simply put, § 2.08(g) is not a gateway for fraud claims.

### 2. Successor liability

Under normal circumstances, "[s]uccessor liability applies to FCA cases." *United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 709 (N.D. Ill. 2012). The theory "allows lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before the acquisition; and (2) there was substantial continuity in the operation of the business before and after the sale." *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir.

1995) (noting that successor liability is an equitable doctrine that "provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities"); see also *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747–48 (7th Cir. 1994). Here, however, Plaintiff does not argue that New Chrysler is liable for Old Chrysler's alleged FCA violations under a theory of successor liability. This is likely because the Sale Order expressly absolves New Chrysler of any and all successor liabilities:

> The Purchaser shall not be deemed, as a result of any action taken in connection with the Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or the acquisition of the Purchased Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Assumed Agreements from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims, including, but not limited to, on any theory of successor or transferee liability, *de facto* merger or continuity, environmental, labor and employment, products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

[Sale Order, 21-2, ¶ 35.] Instead, Plaintiff argues only that New Chrysler is liable for Old Chrysler's alleged FCA violations because FCA claims are not dischargeable in bankruptcy.[5] Plaintiff's argument misses the mark.

To begin, Plaintiff is correct that FCA claims are not dischargeable in bankruptcy. See 11 U.S.C. § 1141(d)(6)(A). But the only means by which those liabilities would transfer to the

---

[5] To be clear, Plaintiff's successor-liability argument could be interpreted as a response to an issue that New Chrysler raised but did not argue. In New Chrysler's motion to dismiss [20], it stated that "Chrysler Group LLC cannot be held responsible for liabilities of DaimlerChrysler Corporation or Chrysler LLC * * * because any such claims were discharged in bankruptcy." In light of that statement, Plaintiff is correct in stating that FCA claims are not dischargeable in bankruptcy. However, in its memorandum in support of its motion for summary judgment, New Chrysler shifts gears, arguing instead that the FCA claims are barred by the bankruptcy court's Sale Order, which provided that New Chrysler could not be held liable under any theory of successor liability as a result of the sale. Thus, the Court is uncertain as to whether Plaintiff's argument is a response to a red herring or an independently endorsed argument.

§ 363 asset purchaser (*i.e.*, New Chrysler) is though (a) express assumption or (b) successor liability. To the former, the Court already established that New Chrysler did not expressly assume any FCA liability under § 2.08 of the MTA. And to the latter, as just mentioned, New Chrysler is not a successor to Old Chrysler. [Sale Order, 21-2, ¶ 35.] As such, whether Plaintiff's FCA claims against Old Chrysler were discharged in bankruptcy is irrelevant here.

The elephant in the room is the notable distinction between a bankrupt entity that chooses to restructure and emerge under a traditional chapter 11 reorganization and an entity that elects an asset sale under § 363(f) of the Bankruptcy Code. Had Old Chrysler elected the former path, because the FCA claims (which arose prior to confirmation) cannot be discharged, Plaintiff would likely be entitled to proceed with his claims against the reorganized Old Chrysler today. However, because the bankruptcy court approved a § 363 sale of Old Chrysler's assets free and clear of any successor claims or interests, Plaintiff's claims lie solely against a now-defunct, potentially-successorless entity. See, *e.g.*, Gregory W. Werkheiser, *Beware of the False Claims Act Claim: The Potential Case-Killer in Your Claims Register*, A.B.I. Journal, Vol. XXIX, No. 4 (May 2010) ("You may be inclined to dismiss concerns about a corporation's inability to discharge FCA debts on the basis that corporate debtors are increasingly foregoing a traditional chapter 11 reorganization in favor of sales free and clear of claims and interests under § 363(f) of the Code. It is true that nothing on the face of § 1141(d)(6) appears to directly diminish the effectiveness of an order authorizing a sale free and clear of claims and interests.").

One way around this predicament is for the parties to expressly impute False Claims Act liability to § 363 purchasers. See, *e.g.*, *In re Haven Eldercare, LLC*, 2012 WL 1357054, at *6 (Bankr. D. Conn. 2012) (including a provision in a § 363 sale stating that "nothing in this Sale Order shall limit the federal government's right to pursue or collect any claim for civil fraud

under the False Claims Act"). But no such provision exists here. And absent any controlling guidance to the contrary, the Court is inclined to uphold the plain language of the Sale Order, absolving New Chrysler of successor liability for all claims not expressly assumed in the MTA, including Plaintiff's FCA claims.

### B.    Whether Plaintiff Plead Facts with Sufficient Particularity

New Chrysler also moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), arguing that Plaintiff failed to plead its FCA claims with sufficient particularity as required by Rule 9(b). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

In addition to meeting the Rule 8(a) requirements, claims brought under the FCA—an anti-fraud statute—are subject to the heightened pleading standard of Rule 9(b). *United States ex rel. Gross v. Aids Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) says that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

Plaintiff argues for a relaxed reading of Rule 9(b), claiming that the purpose of the rule is simply to give the defendants sufficient notice to prepare a defense, such that providing a "general outline" of the fraud scheme is sufficient, especially where the relevant facts are within the sole possession of the defendant. See, *e.g.*, *Corely v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim * * *."). But while the Seventh Circuit "has shied away from a rigid, formulaic approach to Rule 9(b)," *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (7th Cir. 2013), Rule 9(b)'s particularity requirements should not be conflated with the liberal notice-pleading requirements under Rule 8. "The heightened pleading standard in fraud cases established by Rule 9(b) serves 'three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.'" *Id.* (quotation omitted). This heightened standard "force[s] the plaintiff to do more than the usual investigation before filing his complaint." *Camasta*, 761 F.3d at 737 (citation omitted); see also *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105–06 (7th Cir. 2014) (affirming the dismissal of fraud and FCA claims where the plaintiff failed to include "non-conclusory allegations," and noting that "a public accusation of fraud can do great damage to a

firm"); *United States v. Thorek Hosp. & Med. Ctr.*, 2007 WL 2484333, at *8 (N.D. Ill. Aug. 29, 2007) ("The *qui tam* relator must meet the normal standard of particularity required by Rule 9(b)."); *United States v. Ortho-McNeil Pharm.*, 2007 WL 2091185, at *4 (N.D. Ill. July 20, 2007) ("If a relator cannot plead with particularity alleged violations of the FCA, he stands in no better position to assist the Government than any other citizen.").

According to his amended complaint, Plaintiff seeks to hold New Chrysler liable for three separate FCA violations: (1) presenting false claims, (2) using false records, and (3) avoiding an obligation. Plaintiff presents these claims in six separate counts: three identical counts under both the pre- and post-2009 FCA amendments. But the 2009 amendments apply only to conduct occurring on or after May 20, 2009 (or, in the case of claims under new provision § 3729(a)(1)(B), which replaced and amended § 3729(a)(2), after June 7, 2008). See Fraud Enforcement and Recovery Act, Pub. L. 111-21, § 4(f); *Yannacopoulos*, 652 F.3d at 835 n.16. Here, Plaintiff only refers to conduct that occurred in 2004 and 2005 (*i.e.*, pre-amendment). While one could imagine (or infer) additional violative acts that might have occurred post-2009, this would be a large leap from the allegations in Plaintiff's amended complaint (*i.e.*, not a reasonable inference), and it is not the Court's duty to speculate. See *Mason v. Medline Indus., Inc.*, 2009 WL 1438096, at *4 (N.D. Ill. May 22, 2009) (finding that "speculative allegations fail to plead fraud with particularity"). And in response to New Chrysler's Rule 9(b) motion, Plaintiff echoed the allegations in his complaint by again focusing exclusively on Chrysler's 2004–05 conduct, highlighting what is essentially the centerpiece of his complaint: "Chrysler fraudulently induced the Government into purchasing a Chrysler vehicle after the Government was advised that the vehicle would have a 7 year/70,000 mile powertrain warranty," when in fact "these vehicles purchased by the United States did not come with a 7 year/70,000 mile powertrain

warranty." [24, at 8.] Thus, for purposes of this motion, the Court need not consider Counts I, III, and V of Plaintiff's amended complaint, which would come into play only in the face of post-amendment conduct. The Court will proceed to assess the validity of Plaintiff's pleadings under pre-amendment 31 U.S.C. §§ 3729(a)(1),[6] (a)(2),[7] and (a)(7).[8]

### 1. Presenting a false claim under 31 U.S.C. § 3729(a)(1)

For Count II, Plaintiff must plead with particularity that (1) the defendant presented, or caused to be presented, a claim of payment to the government, (2) the claim for payment was false, (3) the defendant knew it was false, and (4) the government sustained damage as a result.[9] 31 U.S.C. §§ 3729(a)(1).

Because Plaintiff blanketly "repeats and realleges each and every allegation contained" in the body of his amended complaint into each of his counts, it is impossible for the Court to decipher exactly which factual allegations are intended to support each claim. As best as the Court can tell, the alleged false claims for payment at issue here are invoices for vehicle repairs that Chrysler presented to the government in which Chrysler falsely stated that certain parts and labor were not covered under the vehicles' warranties, when in fact they were covered. Simply

---

[6] The FCA imposes liability against any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government * * * a false or fraudulent claim for payment or approval." 31 U.S.C. §§ 3729(a)(1).

[7] The FCA imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. §§ 3729(a)(2).

[8] The FCA imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease and obligation to pay or transmit money or property go the Government." 31 U.S.C. §§ 3729(a)(7).

[9] See 31 U.S.C. § 3731(d) ("In any action brought under section 3730, the United States shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence."); *United States v. Frierson*, 1997 WL 136280, at *8 (N.D. Ill. Mar. 19, 1997) (listing damages as the fourth element to an FCA claim); accord *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 417–18 (2005) (confirming that § 3731(d) applies to actions brought under §§ 3730(a)–(b)).

put, Chrysler charged the government for vehicle repairs that were actually under warranty.

While this is a facially cogent theory, Plaintiff fails to allege any instances where Chrysler submitted a false invoice to the government relating to repair work—all such allegations are speculative. But the real issue here is that this allegation, as pled, is more a recitation of damages based on the underlying fraudulent act. In other words, the operative fraudulent act was lying to the government about a warranty, and the inability to reap the benefits of the purported warranty is the damage that stems from that act. In that light, the allegation is not an independent basis for an FCA claim.

Complicating the analysis is Plaintiff's shifting story as to whether Chrysler actually sold the government vehicles with a 7-year/70,000-mile warranty, or whether that was just a hollow inducement. Plaintiff's allegation is either (a) Chrysler did sell the government a 7-year/70,000-mile warranty, but failed to make good on the warranty, or (b) Chrysler purported to sell the government a 7-year/70,000-mile warranty, but actually sold Chrysler a lesser warranty. Plaintiff's complaint says both. [Compare 12, ¶ 4(b), with *id.*, ¶ 23.] By far and large, Plaintiff states the latter in his amended complaint, and argues as much in his response to New Chrysler's motion to dismiss [24, at 8 ("[T]hese vehicles purchased by the United States did not come with a 7 year/70,000 mile powertrain warranty.")]. If Plaintiff believes the former scenario to be true (perhaps in addition to the latter scenario), then the fraudulent act *would be* Chrysler's post-sale false statement that certain parts and labor were not covered under the vehicle's warranty, when in fact they were covered. But as mentioned, Plaintiff did not reference any such transactions in his amended complaint, and thus has failed to state a claim under 31 U.S.C. § 3729(a)(1). If Plaintiff believes only the latter scenario to be true, then, as stated above, this claim is simply a recounting of the damages stemming from the underlying fraudulent sale.

### 2.     Making a false statement under 31 U.S.C. § 3729(a)(2)

For Count IV, Plaintiff must plead with particularity that (1) the defendant made, used, or caused to be made or used, a record or statement in order to receive money from the government, (2) the statement was false, (3) the defendant knew it was false, and (4) the government sustained damage as a result. 31 U.S.C. §§ 3729(a)(2).

This is the heart of Plaintiff's amended complaint. The false statements at issue here are alleged misrepresentations made by Chrysler to the government during the negotiations for the purchase of Chrysler vehicles regarding the vehicles' warranties. As Plaintiff argues, "Chrysler fraudulently induced the Government into purchasing a Chrysler vehicle after the Government was advised that the vehicle would have a 7 year/70,000 mile powertrain warranty," when in fact "these vehicles purchased by the United States did not come with a 7 year/70,000 mile powertrain warranty." [24, at 8.] In response, New Chrysler argues that Plaintiff fails to plead his claim with sufficient particularity because he (1) does not allege that Chrysler ever made a false statement to the government, (2) does not allege that the false statements were made with knowledge of their falsity, (3) does not allege any specific transactions where the government was denied services under warranty, and (4) does not identify any transaction where the government paid money for repairs that should have been covered by warranty.[10] For the most part, the Court agrees.

Before analyzing New Chrysler's allegations, it is helpful to understand that the story that Plaintiff tells in his amended complaint is seemingly derived from a single data point: warranty

---

[10] New Chrysler also argues that Plaintiff fails to meet Rule 8 standards because Chrysler Group did not exist in 2004 and 2005, and thus couldn't have made any fraudulent statements to the government. But Plaintiff refers generally to Chrysler and its agents, and viewed in the light most favorable to Plaintiff, it is clear that Plaintiff is suing New Chrysler as the purported successor of Old Chrysler. And the Court has already addressed the issue of whether Plaintiff can state a claim against New Chrysler as a successor of Old Chrysler, making any additional analysis of that argument unnecessary.

information as it appears on a VIP Summary Report (which is, according to Plaintiff, a document that is generated when a Chrysler dealership or authorized service center enters a vehicle identification number into a Chrysler warranty and owner-information database). Plaintiff attaches 37 examples of these reports—and nothing else—to his amended complaint. [12, exs. 1–37.] In essence, Plaintiff says that the warranties as listed on the VIP Summary Reports differ from what Chrysler allegedly conveyed to the government in 2004 and 2005. Imbedded in that allegation is the core bit of speculation, which is that at some point in 2004 and 2005, some (or all?) Chrysler employees sold some (or all?) Chrysler vehicles to the government with a purported 7-year/70,000-mile warranty. From there, Plaintiff continues to reverse-engineer his complaint by stacking additional inferences onto his core allegation—namely, that Chrysler (and potentially other repair shops) would have refused to honor the purported warranties, forcing the government to pay for repairs that should have been covered; that the government would lose money were it to sell any of these vehicles because the shorter warranty equates to a lesser value; and that Chrysler did all of this intentionally. But Plaintiff does not plead any facts to support these inferences; they are all based on speculation, derived from a single data source.

With that in mind, the Court reviews New Chrysler's argument. As to New Chrysler's first point, Plaintiff's only support for his contention that Chrysler *did not* provide a 7-year/70,000-mile warranty is the fact that the VIP Summary Reports list warranties for certain at-issue vehicles that are inferior to the allegedly advertised warranties. Plaintiff offers no allegations that Chrysler actually refused to provide the warranty as advertised, making Plaintiff's lawsuit somewhat of a fishing expedition. See, *e.g.*, *Mason*, 2009 WL 1438096, at *2 ("In the context of alleged False Claims Act violations, plaintiffs must link specific allegations of fraud to claims for government payment." (citing *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374,

378 (7th Cir. 2003))). Similarly, just as Plaintiff fails to allege that Chrysler actually denied warranty coverage, Plaintiff likewise fails to allege the knowledge component of its *prima facie* case: that Chrysler knew that its purportedly advertised warranty would not be honored. Instead, Plaintiff says that Chrysler made the statements knowing that "dealerships *would likely be advised * * * that th[ese] vehicle[s] did not have a 7 year/70,000 mile powertrain warranty.*" [12, ¶ 30 (emphasis added).] As New Chrysler says, "Chrysler Group remains in the dark as to who made a false statement or purportedly refused the warranty service." These shortcomings equate to a failure to meet Rule 9(b)'s particularity requirement.

Plaintiff's argument that all of the relevant facts are in the sole possession of Chrysler and/or the government is also unavailing. It is curious that Plaintiff was able to access 37 examples of an internal service document purportedly uncovering a scheme to defraud the government, and yet Plaintiff did not reference a single instance where the government actually paid for repair services that should have been covered under the vehicle's stated warranty. While surely some, if not a majority, of the relevant documents are in the possession of others, Plaintiff must do more to transform his allegations from mere conjecture to reasonable inferences; Rule 9(b) requires Plaintiff to engage in enough investigative work such that his complaint does not read as an unjustified fishing expedition. *Goldberg*, 929 F. Supp. 2d at 815; *Camasta*, 761 F.3d at 737.

In addition to New Chrysler's objections, the Court also notes that under Rule 9(b), Plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta*, 761 F.3d at 737 (internal quotation marks omitted). Plaintiff alleges generally that in 2004 and 2005, Chrysler represented to the General Services

Administration ("GSA") that its vehicles had a 7-year/70,000-mile warranty. While Plaintiff need not state "the precise date, time, and location" of each allegedly fraudulent statement and "every word that was included" in it, *id.*, Plaintiff offers only conclusory statements that "Chrysler conveyed to the GSA" that a vehicle had a specific warranty [see, *e.g.*, 12, ¶ 35]. But such statements read more like reverse-engineered inferences constructed from the information found on VIP Summary Reports in Plaintiff's possession [12, exs. 1–37], without any other indicia of reliability. And again, Plaintiff cannot save his argument by claiming that all of the relevant facts are in the possession of others, for while the Seventh Circuit allows a plaintiff some flexibility in stating a claim under Rule 9(b), "a plaintiff alleging fraud 'does not have unlimited leeway'" when it comes to pleading facts allegedly beyond the plaintiff's realm of knowledge. *Camasta*, 761 F.3d at 738 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)).

### 3. Avoiding an obligation under 31 U.S.C. § 3729(a)(7)

For Count VI, Plaintiff must plead with particularity that (1) the defendant made, used, or caused to be made or used a record or statement in order to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government, (2) the statement was false, (3) the defendant knew it was false, and (4) the government sustained damage as a result. 31 U.S.C. §§ 3729(a)(7).

Again, as best as the Court can tell, the conduct at issue here is Chrysler's alleged refusal to advise the government that certain parts and labor should be covered under certain warranties and concealing Chrysler's obligation to perform repairs under warranty. Short of the conclusory allegations in the introduction of Plaintiff's amended complaint [12, ¶ 4], Plaintiff does not allege any facts to establish such a claim, nor does Plaintiff make any attempt to resuscitate this

claim in his response to New Chrysler's motion to dismiss. As pled, this claim reads as yet another inference-based fishing expedition that lacks any substance beyond its initial curb appeal. There is simply too much speculation embedded in this claim to survive Rule 9(b)'s particularity requirement.

In conclusion, the Court agrees with New Chrysler that Plaintiff has failed to plead any of its FCA claims with sufficient particularity to satisfy the heightened pleading requirement of Rule 9(b). Accordingly, Plaintiff's claims are dismissed for this reason as well.

### C.      Right to Amend

Plaintiff argues that to the extent there are defects in his Amended Complaint, the appropriate remedy is to dismiss the complaint without prejudice to allow Plaintiff to amend his pleadings. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Plaintiff cites to *Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004) in support, but in that case, the Seventh Circuit affirmed a district court's denial of a motion for leave to amend that was filed after the court dismissed plaintiff's complaint with prejudice. Here, while Plaintiff's request comes prior to any ruling on the merits of his complaint and is thus technically still pre-judgment, his argument is not in the form of an *ex ante* motion for leave to amend (*i.e.*, the form in which it would be entitled to a liberal presumption in favor of the request to amend). Instead, Plaintiff's plea—subsumed within his response brief—is more of a last-ditch effort to string up a safety net, perhaps in reaction to New Chrysler's motion.

Regardless, because at least one fault in Plaintiff's complaint is an issue that seemingly cannot be remedied by revision (*i.e.*, Plaintiff cannot rewrite the Sale Order or the MTA), the Court is highly skeptical that Plaintiff can overcome the above-mentioned shortcomings. That being said, just in case the Court has failed to appreciate some game-changing fact, the Court

grants Plaintiff 60 days to file a second amended complaint, which must address and remedy all of the issues discussed in this opinion.

## III.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss [20] is granted without prejudice. Plaintiff has 60 days to file a second amended complaint, should he so choose. If Plaintiff does not file a second amended complaint within 60 days, the case will be dismissed with prejudice.

Dated: January 28, 2015

_____
Robert M. Dow, Jr.
United States District Judge