# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ) <br> WILLIAM CEAS JR. and WILLIAM CEAS JR., ) <br> individually; ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRYSLER GROUP LLC; ) <br> ) <br> Defendant. ) | Case No.: 12-cv-2870 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion to dismiss [36] Plaintiff's second amended complaint. For the reasons stated below, Defendant's motion to dismiss [36] is denied. The case is set for a status hearing on 2/4/2016 at 9:00 a.m.

## I.   Background[1]

In Plaintiff's[2] much-streamlined second amended complaint, he alleges that Defendant sold a number of vehicles to the Government in 2004 and 2005 that were covered by a 7-year, 70,000 mile powertrain warranty. Plaintiff says that in "hundreds, if not thousands" of instances, Defendant (through its dealerships) concealed from the government its obligation to provide parts and labor under the vehicles' powertrain warranties and charged the Government for repairs that should have been covered under those warranties. Plaintiff provides three specific examples of these allegedly false claims, including (1) a November 18, 2010 invoice to the

---

[1]   The Court accepts as true the facts alleged in Plaintiff's second amended complaint and makes all reasonable inferences in his favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

[2]   The United States declined to intervene in this action pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2)(A) [6], and Plaintiff Ceas is continuing in the action as a relator in the name of the United States.

United States Coast Guard for $1,215.05, (2) a January 6, 2012 invoice to the Navy Engineering Logistic Office for $371.27, and (3) a September 28, 2010 invoice to the United States Department of Agriculture for $770.94. In each instance, Plaintiff alleges that the repair work in question was, at least in part, covered by the vehicles' warranties, but that Defendant knowingly (or recklessly) failed to honor those warranties, and that the Government ultimately paid for repairs that should have been covered under warranty.

In response to Defendant's motion to dismiss, Plaintiff provided additional facts regarding the repair process at issue here.[3] Plaintiff claims that when a vehicle is taken into a Chrysler dealership for repairs, the dealership follows a series of protocols to determine warranty coverage eligibility. Specifically, dealerships use a program called DealerCONNECT (which Plaintiff claims is Defendant's program), wherein the dealership enters the vehicle's VIN and odometer reading, and Defendant produces a VIP Summary Report to the dealership "informing the dealership and in turn the customer, whether it be an individual or the government, of the vehicle's Factory Warranty Coverage eligibility." [40, at 6.] Plaintiff alleges that it is through these VIP Summary Reports that Defendant made its false claims. Plaintiff attached to his second amended complaint copies of the VIP Summary Reports for the three vehicles mentioned above. [See 32-1, at 2–3, 8–9, 14–15.]

Plaintiff raises two claims in his second amended complaint: (1) a violation of 31 U.S.C. § 3729(a)(1)(A) for knowingly presenting, or causing to be presented, to the Government false or fraudulent claims for payment or approval, and (2) a violation of 31 U.S.C. § 3729(a)(1)(G) for knowingly concealing its obligation to provide parts and labor under warranty, but charging the

---

[3] In opposing a Rule 12(b)(6) motion, a plaintiff may elaborate on his or her factual allegations so long as the new elaborations are "consistent with the pleadings," and may submit materials outside the pleadings "to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Government anyway. Defendant moves to dismiss both claims, arguing (1) that Plaintiff failed to identify statements made by Defendant to the Government, (2) that Plaintiff failed to adequately plead that Defendant caused any of the allegedly false statements to be submitted to the government, and (3) that Plaintiff failed to adequately plead that Defendant *knowingly* submitted false claims to the Government.

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

In addition to meeting the Rule 8(a) requirements, claims brought under the FCA—an anti-fraud statute—are subject to the heightened pleading standard of Rule 9(b). *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) says that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). "[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim * * *." *Corely v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

While the Seventh Circuit "has shied away from a rigid, formulaic approach to Rule 9(b)," *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (7th Cir. 2013), Rule 9(b)'s particularity requirements should not be conflated with the liberal notice-pleading requirements under Rule 8. "The heightened pleading standard in fraud cases established by Rule 9(b) serves 'three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.'" *Id.* (quotation omitted). This heightened standard "force[s] the plaintiff to do more than the usual investigation before filing his complaint." *Camasta*, 761 F.3d at 737 (citation omitted); see also *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105–06 (7th Cir. 2014) (affirming the dismissal of fraud and FCA claims where the plaintiff failed to include "non-conclusory allegations," and noting that "a public accusation of fraud can do great damage to a firm"); *United States v. Thorek Hosp. & Med. Ctr.*, 2007 WL 2484333, at *8 (N.D. Ill. Aug. 29, 2007) ("The *qui tam* relator must meet the normal standard of particularity required by Rule 9(b)."); *United States v. Ortho-McNeil Pharm.*, 2007 WL 2091185, at *4 (N.D. Ill. July 20, 2007) ("If a relator cannot plead with particularity alleged violations of the FCA, he stands in no better position to assist the Government than any other citizen.").

**III.   Analysis**

The FCA imposes liability where any party "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). To succeed on such a claim, "a relator must prove the existence of: (1) a false or fraudulent claim; (2) which was presented for payment, or caused to be presented for payment, by the defendant; (3) with knowledge the claim was false." *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 709 (7th Cir. 2015); *United States ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 604 (7th Cir. 2005) (referring to the "three essential elements" of an FCA claim). In addition, the false statement must be material, which means that the statement could "have influenced (or naturally tended to influence) the [Government's] decision to" pay. *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 830 (7th Cir.2011); see also *id.* at 828 ("In light of that undisputed disclosure, no reasonable jury could think General Dynamics' failure to check the proper box in the Certification Agreement was a material false statement, as required for liability under the False Claims Act.").

Similarly, in what is often referred to as a "reverse" FCA claim, the FCA imposes liability where any party "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); see also *United States ex rel. Rockey v. Ear Inst. of Chi., LLC*, 92 F. Supp. 3d 804, 824 (N.D. Ill. 2015).

**A.    Statement or Claim**

The first point of contention between the parties is whether Plaintiff adequately alleged that Defendant made any false statements. By Defendant's reading of the second amended

complaint, it was employees of independently franchised dealerships (*e.g.*, Manfredi Auto Group, Ourisman Chrysler Jeep Dodge Ram of Alexandria, and Sheets Chrysler Jeep Dodge) who allegedly made the false claims at issue here, not Defendant. The Court is not persuaded.

The false statements alleged here are Defendant's statements that the powertrain warranties on certain vehicles had expired when in fact the warranties were still valid. Describing the process in more detail, Plaintiff alleges that before making repairs on a Chrysler vehicle, a dealership must check with Chrysler to see if the necessary repairs are covered under warranty, or whether the customer will have to pay for the repairs out of pocket. To make such a request, the dealership enters the vehicle's VIN and odometer reading into Defendant's program (called DealerCONNECT), and then Defendant produces a report (called a VIP Summary Report) providing detailed information about the vehicle, including the status of any warranties. The warranty information comes from Defendant.

Plaintiff provides three examples of these VIP Summary Reports issued by Defendant in response to inquiries from dealerships regarding repairs on government-owned vehicles.[4] In each of these reports, Defendant lists the duration of the vehicle's powertrain warranty as "36 Months or 36,000 miles" and the then-current status of the warranty as "Expired," despite the fact that the warranties allegedly were still valid. [See 32-1, at 2–3, 8–9, 14–15.] Based on these allegations, Plaintiff has sufficiently alleged that Defendant made false statements. *Cf. United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 897 (N.D. Ill. 2009) ("Typically, FCA claims fail because the plaintiff can only point to a fraudulent scheme and are unable to present evidence at an individualized transaction level.").

---

[4] While useful, the production of invoices is not necessary at the pleading stage. See *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) ("We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential * * *.").

Defendant attacks the specificity of Plaintiff's allegation, claiming that Plaintiff failed to identify "(1) the Government personnel submitting the vehicle for repair, (2) the individual who denied the repair, or (3) the content of the conversation between the denier of the repair and the Government agent regarding why coverage was denied." [42, at 3.] But this is not the type of information that Rule 9(b) requires in this instance, nor is this information relevant to the question of whether Defendant made a false statement. Moreover, it is difficult to imagine (a) how Plaintiff would go about learning the names of the individuals involved in the conversations leading up to vehicle repairs in question, or (b) how that information would materially impact the merits of this case. Here, Plaintiff only needs to allege that Defendant made a false statement, and Plaintiff satisfied his duty of investigation as to that element by providing three examples of statements from Defendant (the VIP Summary Reports) showing that the vehicles' powertrain warranties had expired when they allegedly had not.

### B. Presentation

Defendant's second argument is that Plaintiff failed to allege that Defendant caused false claims to be submitted to the Government. The FCA proscribes both those who *directly* present false claims to the Government, and those who do so *indirectly* by causing another to present the allegedly false claim. See 31 U.S.C. § 3729(a)(1)(A). Plaintiff alleges that Defendant provided false information regarding vehicle warranties to its dealerships (as presented in its VIP Summary Reports), and that the dealerships in turn provided that same false information to the Government, consequently charging the Government for repairs that Defendant should have covered under warranty. Again, the false statements are that the vehicles' powertrain warranties had expired when they hadn't, and thus that the Government would have to incur the cost of repair. The causal chain here is simple: the dealership either collects payment from the customer

7

or the manufacturer (*i.e.*, Defendant), and if Defendant tells the dealership that it's not paying, then the charge goes to the customer. Therefore, Defendant caused the dealerships to present claims for payment to the Government by telling the dealerships that the vehicles in question were not under warranty. Plaintiff provides three specific examples of this scheme, showing first Defendant's VIP Summary Reports stating that the vehicles' powertrain warranties ostensibly had expired, followed by invoices from the dealerships to the Government charging for repairs that allegedly should have been covered under the vehicles' powertrain warranties.

Defendant attacks the particularity of Plaintiff's allegations, arguing that "[t]hroughout this alleged scheme, no individual from Chrysler Group is involved or implicated." [42, at 7]; see also *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923–24 (7th Cir. 1992) ("[Plaintiff's allegations] do not even hint at the identity of those who made the misrepresentations, the time the misrepresentations were made, or the places at which the misrepresentations were made."); *Credit Ins. Consultants, Inc. v. Gerling Global Reinsurance Corp. of Am.*, 210 F. Supp. 2d 980, 983 (N.D. Ill. 2002) ("Plaintiffs should identify specific actors in the representative incidents.").

But Plaintiff does allege a specific actor: Chrysler Group. See *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 125–26 (2003) ("While § 3729 does not define the term 'person,' * * * [t]here is no doubt that the term then extended to corporations * * *."). Plaintiff alleges that Chrysler Group deliberately misrepresented the powertrain warranties of Government vehicles via the VIP Summary Reports that it provided to its service centers, causing the Government to incur costs for repairs that should have been covered under warranty. "The complaint makes clear, in other words, that corporate levers were pulled; identifying precisely who pulled them is not an inexorable requirement of Rule 9(b) in all cases." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.D.C. 2015) (citing *United States ex rel.*

*Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007) ("[W]here the corporation is the defendant in a [False Claims Act] action, we hold that a relator need not always allege the specific identity of the natural persons within the defendant corporation * * *. [S]uch information is merely relevant to the inquiry of whether a relator has pled the circumstances constituting fraud with particularity.")). In the three representative transactions that Plaintiff describes in his complaint, the VIP Summary Reports and related invoices include ample information to apprise Defendant of the dates, times, locations, and service advisors involved in the transactions. This provides notice to Defendant of the allegedly false statements, it demonstrates that Plaintiff is not embarking on a fishing expedition, and it poses a legitimate question to Defendant that justifies the potential reputational harm to Defendant that might stem from the continuing of this lawsuit. See *Goldberg*, 929 F. Supp. 2d at 815. In this instance, Plaintiff's failure to identify culpable individuals within the corporation is not fatal to his claim.

In a related argument, Defendant says that Plaintiff failed to allege that Defendant was paid any monies as a result of fraudulent statements. To succeed on an FCA claim, a relator must prove the existence of a false or fraudulent claim which was presented (or caused to be presented) to the Government *for payment*.[5] 31 U.S.C. § 3729(a)(1)(A); see also *Sanford-Brown, Ltd.*, 788 F.3d at 709. Here, Plaintiff alleges that the Government paid the dealerships, *not*

---

[5] This standard does not apply to Count II of Plaintiff's second amended complaint (the so-called "reverse" FCA claim). Specifically, Plaintiff argues in Count II that Defendant violated 31 U.S.C. § 3729(a)(1)(G) by "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). In other words, Count I says that Defendant violated the FCA by making the Government pay for certain repairs, and Count II says that Defendant violated the FCA by concealing its obligation to pay for those same repairs. Defendant does not distinguish between these two claims in its motion to dismiss, and barely mentions 31 U.S.C. § 3729(a)(1)(G) at all. One question that the parties eventually will need to address is whether a single false statement can give rise to liability under both 31 U.S.C. § 3729(a)(1)(A) and (G)—*i.e.*, can Defendant's false statement be both an inducement to pay and a concealment of a duty to pay?—or whether Plaintiff will only be able to recover under one of his theories of liability. Because Defendant did not raise this issue, the Court will not address it here.

Defendant. But the statute does not require that the offending party be the one receiving the payments made on the false claims (and Defendant provides no authority to the contrary); the statute only requires that the offending party knowingly cause false claims for payment to be submitted to the United States for payment. See *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 738 (N.D. Ill. 2010) ("The wealth of case law supports the proposition that the FCA reaches claims that are rendered false by one party, but submitted to the government by another." (citations omitted)); *United States v. Omnicare, Inc.*, 2013 WL 3819671, at *9 (N.D. Ill. July 23, 2013) (same). In fact, the statute doesn't even require that the Government actually pay the claim—the presentation of a false claim for payment is all that is required. See *Heath*, 791 F.3d at 125 ("A person that presented fraudulent claims that were never actually paid remains civilly liable.").

Finally, Defendant argues that Plaintiff failed to allege that the VIP Summary Reports—*i.e.*, Defendant's allegedly false statements—were ever presented to the Government. This argument is not persuasive. Again, the scheme here (evidenced by the three example transactions) begins when the Government brings a vehicle into a dealership for repair. The dealership diagnoses the vehicle, and then uses Defendant's computer program to determine whether the necessary repairs are covered under warranty. The dealership then communicates that information to the customer: either the customer pays or Defendant pays. The lie in this scenario is Defendant's misrepresentation regarding the warranty. And the delivery method is indirect: Defendant's lie is transmitted to the Government by the dealership by way of the service protocol designed and implemented by Defendant. The fact that the dealership relays the false statement verbally and/or through a written invoice charging the Government for the repairs (instead of by passing along the VIP Summary Report) does not shield Defendant from liability

under the FCA; as explained above, "the FCA reaches claims that are rendered false by one party, but submitted to the government by another." *Mason*, 731 F. Supp. 2d at 738. Moreover, it is unrealistic to think that a dealership would give a VIP Summary Report directly to a customer. The VIP Summary Reports provide a detailed (and "confidential") history of a vehicle, including service information, owner information, recall information, warranty information, sale information, and service history. The more plausible story is that the dealership would use the VIP Summary Report to assess warranty coverage, and then communicate the warranty information to the customer in conjunction with its proposal. The fact that the lie changes media is irrelevant; Plaintiff has sufficiently alleged that Defendant's false claims were presented to the Government.

**C.  Knowledge**

Defendant's third and final argument is that Plaintiff failed to plead that Defendant *knowingly* submitted false statements to the Government. To state viable claims under § 3729(a)(1)(A) and (G), Plaintiff must plausibly allege that Defendant knew that its statements regarding the expiration dates of the powertrain warranties on the Government's vehicles were false.

The FCA defines knowledge as "actual knowledge," "deliberate ignorance of the truth or falsity," or "reckless disregard of the truth or falsity" of the relevant information. 31 U.S.C. §§ 3729(b)(1)(A)(i)–(iii). Showing that a defendant had knowledge "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). A plaintiff's allegation of knowledge is subject to the federal pleading standard as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, * * * [m]alice, intent, knowledge, and other conditions of a person's mind may be

alleged generally."); *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 1000–01 (7th Cir. 2014) (noting the "lower pleading threshold" for alleging knowledge under the FCA).[6]

Plaintiff makes the following allegation in the second amended complaint:

> In June 2010, the Relator informed New Chrysler, including Curtis Jeffries, Warranty/Customer Relations Manager[,] of the widespread problem of New Chrysler customers having the wrong warranty coverage. Despite bringing this information to New Chrysler's attention, and asserting that nearly one million New Chrysler customers have the wrong warranty coverage, New Chrysler took no action, to Relator[']s knowledge, to resolve and correct warranty coverage errors. In fact, New Chrysler knowingly presented or caused to be presented false claims to the Government for payment of parts and labor that were in fact covered under the Factory Powertrain Warranty in violation of the False Claims Act.

[32, ¶ 25.] Plaintiff relies solely upon on this allegation as his basis for alleging that Defendant knowingly defrauded the Government, arguing that (a) Plaintiff personally informed Defendant of the problem in June of 2010, but (b) Defendant continued to defraud its customers, including in the three example transactions discussed in the second amended complaint, all of which occurred after June of 2010. [See 32, ¶¶ 30, 34, 38.]

Defendant argues that "[m]erely because Chrysler Group uses DealerCONNECT does not imply that Chrysler Group is knowingly causing the dealerships to fraudulently deny the Government warranty coverage." [42, at 9.] But Plaintiff does not make any such allegation; Plaintiff alleges that Defendant acted knowingly based on the fact that Plaintiff informed Defendant of the problem in June 2010. To that end, Defendant argues that Plaintiff's allegation regarding his June 2010 whistleblowing lacks specific facts regarding the purported problem. The Court is not persuaded. Plaintiff alleges that he informed Defendant "of the widespread problem of New Chrysler customers having the wrong warranty coverage," which, read in context of Plaintiff's second amended complaint, plausibly suggests that Defendant acted with

---

[6] Defendant cites *Thulin* in stating that "[w]ith respect to this knowingly element of a False Claims Act cause of action, the Rule 9(b) heightened pleading requirements still apply." [42, at 8.] This is a disingenuous reading of both *Thulin* and Fed. R. Civ. P. 9(b).

12

knowledge, or at least with reckless disregard of the truth. This is sufficient to state a plausible claim of knowledge.

Defendant also argues that Plaintiff "at best, allege[s] a mistake generated by a computer program, which falls short of the requisite scienter necessary for a False Claims Act [claim]." [42, at 11 (citing *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999).] The Court disagrees. Even if the errors in question were a result of a computer glitch, Plaintiff nonetheless alleges that he informed Defendant of the problem in June 2010, but that Defendant refused to correct the issue and continued to present false claims regarding warranty coverage. Again, this is sufficient to state a plausible claim of knowledge.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [36] is denied. The case is set for a status hearing on 2/4/2016 at 9:00 a.m.

Dated: January 19, 2016

_____
Robert M. Dow, Jr.
United States District Judge